IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN HACKEL,

                Plaintiff,

    v.

NATIONAL FEEDS, INC., OHIO
CASUALTY INSURANCE CO.,
UNITED PET FOODS, INC., and
CINCINNATI INSURANCE CO.,

                Defendants,

NATIONAL FEEDS, INC., and OHIO
CASUALTY INSURANCE CO.,

                Cross Claimants,

    v.

UNITED PET FOODS, INC., and
CINCINNATI INSURANCE CO.,

                Cross Defendants.

OPINION AND ORDER

12-cv-642-wmc

---

This case is set for a jury trial on January 13th on plaintiff John Hackel's various tort law claims against defendants National Feeds, Inc. and United Pet Foods Inc., as well as their insurers, Ohio Casualty Insurance Co. and Cincinnati Insurance Co, respectively. In advance of the court's final pretrial conference, the court issues the following order with respect to the parties' pending motions in limine.

OPINION

I.  Plaintiff's Motions in Limine

    A.  Limiting evidence regarding possible potential causes of the death of Hackel's mink (dkt. #133)

Plaintiff's expert, Dr. Hugh H. Hildebrandt, testified at his deposition to a long list of possible diseases and other complications one may encounter in an ordinary mink operation. (Pl's Br. in Supp. of MILs (dkt. #134) 2.) Plaintiff contends that this testimony is not relevant to whether his mink died due to rancid feed because there is no evidence that these diseases or conditions "probably" existed at Hackel's farm. Even if relevant, plaintiff further argues the testimony should be excluded under Rule 403 because it will confuse the jury and waste time. In response, defendants contend that this testimony is relevant to the jury's weighing of Hildebrandt's opinions about causation. In particular, defendants argue that Hildebrandt "cherry-picked" only a couple causes and failed to adequately consider historical data. (National's Opp'n (dkt. #182) 10-12.) The court will deny this motion in limine. Plaintiff's expert testimony about other possible causes of mink death is proper grounds for cross-examination. Plaintiff remains free, of course, to explore with his expert whether these grounds actually existed at Hackel's farm or other reasons for excluding them as a probable cause of the alleged downturn in his mink operation.

    B.  Permitting evidence concerning other mink farms (dkt. #133)

Plaintiff also seeks an order that would permit him to introduce evidence of other mink farmers who used feed sold by National in 2010 and whose mink experienced adverse health effects. In response, defendants argue that plaintiff has failed to establish

2

that these "other instances are 'substantially similar' to the circumstances at issue in this matter." (National's Opp'n (dkt. #182) 13 (quoting *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988)).) Specifically, National contends that Hackel has failed to establish that theses farmers used "the same products from the same production batches." (*Id.* at 14.) On the contrary, United argues that there is evidence that these farmers (1) purchased different United feed than Hackel and (2) registered different complaints than Hackel. (United's Opp'n (dkt. #171) 8.)

The substantially similarly test does not require that the circumstances of other product defects be exactly the same as that involved in the lawsuit. *See Mihailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004) ("In applying this standard, we have emphasized that 'substantially similar' does not mean 'identical,' and that the range between similar and identical is a matter to be addressed on cross-examination." (internal citation omitted)). By its very name, the test allows for some variation.

Here, plaintiff has submitted evidence in the form of claims information forms submitted to National detailing problems with National feed similar to those Hackel experience during the same period of time. (Declaration of Michael J. Brose, Exs. (dkt. ## 135-2 to 135-5).) This evidence provides a sufficient basis to allow evidence of other farmers' problems with National feed "to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." *Nachtsheim*, 847 F.2d at 1268. Accordingly, the court will grant plaintiff's motion and permit such evidence, subject to the rules of evidence, including lack of foundation or inadmissible hearsay.

3

**II. Defendant National's Motions in Limine**

    **A. Preventing plaintiff from introducing evidence of defect in Mink Reproduction product (dkt. #147)**

National seeks an order excluding evidence or argument that National's Mink Reproduction product is defective based on plaintiff's claimed failure "to adduce evidence as to any type of defect in this National Feeds, Inc. product or evidence that any of this product was ever sold to, delivered to or used by Plaintiff that did not conform to the quality assurance standards for such a product." (Dkt. #147.) In response, Hackel concedes that he does not have "test results or other empirical evidence" demonstrating that Mink Reproduction was defective. (Pl.'s Opp'n (dkt. #184) 2.) (In contrast, he does have this type of evidence for National's Mink Lactation and GroMax products.) Still, he contends that he received Mink Reproduction from National in February 2010 and that his females began to scratch out their food after eating that product.

National failed to develop any argument or direct the court to any case law -- indeed, its entire motion is a single paragraph -- that plaintiff must put forth *empirical* evidence to demonstrate a product defect. While the mink's adverse reaction to the feed alone may not be sufficient to go forward with a claim that the Milk Reproduction product is defective, the court will give plaintiff an opportunity to make a complete proffer outside the jury's presence. In the meantime, defendant National's motion will be granted.

    **B. Striking Behr's expert report as untimely (dkt. #147)**

National also seeks an order striking as untimely the supplemental report of plaintiff's damages expert, Dr. Behr, dated September 24, 2013. (Dkt. #147.) National

4

contends that to the extent Dr. Behr's supplemental report relies on new data, plaintiff has failed to explain why such data was not available at the time of his timely, initial report dated August 2, 2013. (*Id.* at 2.) In response, plaintiff contends that Dr. Behr's supplemental report "amend[s] some of his conclusions regarding Hackel's damages based on questions raised during his depositions." (Pl.'s Opp'n (dkt. #184).)

As an initial matter, both Dr. Behr's original and supplemental reports -- indeed, all expert reports -- are hearsay and will not be admitted into evidence. More to the point, Dr. Behr may testify about the opinions and the bases or reasons for those opinions set forth in his original report, as well as defend or modify those opinions in response to defendant's challenges to specific evidence on which Dr. Behr relied or additional evidence introduced at trial. What he may not do is offer new opinions, nor offer new bases or reasons for his original opinions unless defendants were to open the door in cross examination. Accordingly, defendant's motion to bar Behr's supplemental report from evidence will be granted.

III. Defendant United's Motion in Limine

Motions in limine were due on December 6, 2013. On that day, United submitted a motion in limine seeking exclusion of Exhibit JH-5, as well as any and all testimony related to that exhibit under Rule 901(b)(1). (Dkt. #150.) The next day United submitted a brief in support of that motion, as well as two other motions in limine not previously disclosed. (Dkt. #153.) The second and third referenced motions (which United combined in one argument) concern the admission of evidence regarding

5

other mink farms, especially evidence regarding necropsies and pathology studies performed on mink not owned by Hackel.

Plaintiff subsequently moved to strike the brief, as well as the two other motions, as untimely. (Dkt. #186.) In response to that motion, United explains that the delay in filing its brief in support of its motions in limine was due to "numerous transcription and transmittal errors that occurred during the last two hours before the Court's deadline," and that it inadvertently filed a first draft of its motion in limine instead of the final draft, which would have included all three motions in limine. (United's Opp'n (dkt. #195) n.1, p.4.) As a strictly technical matter, all of this untimely material is excludable (and the court will become increasingly strict as to deadlines as the trial date approaches), but the brief here was filed early on the December 7th, just hours after it was due, and plaintiff cannot and does not argue that it was prejudiced by this relatively short delay. Moreover, the second and third motions are essentially an opposition to plaintiff's affirmative motion to admit evidence regarding other farms, and as such perfectly timely. Accordingly, the court will deny plaintiff's motion to strike and consider all three motions in limine and the arguments provided in the brief in support of those motions.

### A. Excluding Exhibit JH-5 (dkt. #150)

Exhibit JH-5 attached to United's counsel's affidavit purports to be an "analysis request form" from "Eurofins" in which there are four samples listed with hand-written notes that "1 + 3 are better product; 2 + 4 -- terrible product." (Declaration of Marc J. Meister ("Meister Decl."), Ex. E (dkt. #152) 4.) United represents that Hackel produced

6

this document and that at his deposition further testified that he took samples from at least two bags of mink feed that were stored on different pallets at his farm sometime after June 3, 2010, when Hackel switched to XK feed. (United's Br. (dkt. #153) 4.) Hackel gave those samples to an XK nutritionist, who in turn purportedly submitted the samples to Eurofins for testing. (*Id.*) Hackel could not identify the handwriting on JH-5, and did not seek the actual test results from the laboratory. (*Id.*) Hackel also could not identify the mink feed he sampled. (*Id.*) United also submitted a letter from Hackel's attorney with an attached email from a Eurofins representative stating that it cannot locate the tests that might relate to this request for analysis form. (Meister Decl., Ex. E (dkt. #152) 5-6.) Hackel does not contest United's motion, conceding that the test results have not been located. (Pl.'s Opp'n (dkt. #183).) Accordingly, the court will grant United's motion to exclude Exhibit JH-5.

> **B. Prohibiting admission of evidence regarding other mink farms, and specifically evidence regarding necropsies and pathology studies performed on mink not owned by Hackel (dkt. #153)**

The court will further deny United's motion for the reasons set forth above in granting plaintiff's motion to admit evidence of other mink farms. Necropsies and pathology studies of other minks will also be admitted subject to plaintiff laying an adequate foundation that these mink ingested feed which was "substantially similar" to that fed to Hackel's mink.

ORDER

IT IS ORDERED that:

1) plaintiff Jon Hackel's motion in limine to exclude evidence regarding possible potential causes of the death of Hackel's mink (dkt. #133) is DENIED;

2) plaintiff's motion in limine to permit evidence concerning other mink farms (dkt. #133) is GRANTED;

3) defendants National Feeds, Inc. and Ohio Casualty Insurance Co.'s motion in limine to prevent plaintiff from introducing evidence of defect in Mink Reproduction product (dkt. #147) is GRANTED without prejudice to a further proffer;

4) defendant National's motion in limine to strike plaintiff's damages expert Dr. Behr's supplemental expert report as untimely (dkt. #147) is GRANTED IN PART AND DENIED IN PART as set forth above;

5) defendants United Pet Foods, Inc. and Cincinnati Insurance Co.'s motion in limine to exclude Exhibit JH-5 (dkt. #150) is GRANTED as unopposed;

6) defendant United's motions in limine to exclude evidence of other mink farms and specifically necropsies and pathology studies on other mink (dkt. #153) are DENIED; and

7) plaintiff's motion to strike United's brief in support of motions in limine (dkt. #186) is DENIED.

Entered this 3rd of January, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge